SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KHADIJA DIALLO,
individually and on behalf of herself an all others
similarly situated,

**CV-12              5193**

Plaintiff,

v.                    IRIZARRY, J.

APIM, LLC,            AZRACK, M.J.

Defendant.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1.      Plaintiff Khadija Diallo (Ms. Diallo), on behalf of herself and all others similarly

situated, brings suit against Defendant APIM, LLC (APIM) for its violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA), and N.Y. Gen. Bus. Law § 349, *et*

*seq.*(NY GBL § 349), for sending deceptive and misleading debt collection letters to consumers.

**PRELIMINARY STATEMENT**

2.      This case involves the use of abusive, deceptive, and unfair methods to intimidate

unsuspecting consumers into settling time-barred debts based on grossly inaccurate information

and without being informed of their rights, as required under law.

3.      The Consumer Financial Protection Bureau, the Federal Trade Commission, and

the New York City Department of Consumer Affairs (DCA) receive more complaints about the

debt collection than any other industry. *See* Consumer Financial Protection Bureau, Fair Debt

Collection Practices Act Annual Report 2012, 5; Federal Trade Commission Annual Report

1

2011: Fair Debt Collection Practices Act, 4 (2011); and New York City Department of Consumer Affairs, Debt Collection Guide, 3.  In particular, harassment is prevalent by third-party debt collectors—companies that purchase charged-off debt for pennies on the dollar and attempt to collect on the full amounts. *See id.*

4.     Congress enacted the FDCPA in response to "evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C.A. § 1692 (a). The purpose of the law is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. § 1692 (e).

5.     In an effort to protect New York City residents from abuses by debt collectors, DCA imposes a licensing requirement on all debt collection agencies that collect debts in New York City. The purpose of the licensing requirement is to "protect the interest, reputations and fiscal well-being of the citizens of this city against those agencies who would abuse their privilege of operation." NYC Admin. Code § 20-488.

6.     To further its effort to regulate and combat abuses, DCA has promulgated certain rules with which debt collectors must comply when seeking to collect debts in New York City. For example, DCA requires collectors to notify a consumer in plain English when it is attempting to collect on a debt that is already time-barred by the statute of limitations.  Rules of the City of New York § 2-191.  The purpose of this rule is to "clearly inform[] consumers about how the statute of limitations prevents creditors from obtaining judgments, alert[] them to steps that they

2

must take to effectuate their rights, and advise[] them about the consequences of making payment on such debts should they choose to do so." § 20.104 of the New York City Administrative Code. *Notice of Adoption of Rule Regarding Debt Collection Agencies*, 137 The City Record 272, 276 n.57 (March 25, 2012). Importantly, one such consequence of making a payment is to restart the statute of limitations.

7.      In October 2011, Ms. Diallo received a collection letter (attached to this Complaint as Exhibit A), from Defendant APIM about an old credit card debt that was long past New York's six-year statute of limitations for actions based on contract. NY CPLR § 213. The letter contained several deceptive statements and omitted important mandatory disclosures, including § 2-191 of the Rules of the City of New York's notification requirement for time-barred debts. It also threatened to report Ms. Diallo's debt to the IRS if she did not resolve the account right away. Defendant even attached a draft 1099-C form to the letter, which included fabricated information, in order to intimidate and mislead Ms. Diallo into believing that she would have tax liability if she did not settle.

8.      The letter was extremely misleading in that: it concealed the fact that in order for Ms. Diallo to incur any tax liability, APIM would first have to cancel the debt, discharging her of any liability to APIM; it exaggerated the amount that she would owe to the IRS if it were to cancel the debt; it failed to disclose that there are a number of exemptions to tax liability available to her, even if it did cancel the debt; and it threatened an action – reporting to the IRS – that it had no intention of taking.

9.      Upon information and belief, APIM made these misleading statements because it

3

knows the threat of tax liability, even if unfounded, is especially intimidating to low-wage

workers who rely on refundable tax credits for substantial portions of their income. For

example, the Earned Income Tax Credit (EITC) is commonly referred to as the largest poverty

reduction program in the United States. *See* Statement of Robert Greenstein, President, Center

on Budget and Policy Analysis, On Census' 2011 Poverty, Income, and Health Insurance Data

(September 12, 2012) *available at* http://www.cbpp.org/files/9-12-12pov-stmt.pdf. The 2011

Census Bureau found that the EITC lifted 5.7 million above the poverty line in 2011 alone. *Id.*

10.     Having the IRS intercept one's EITC, child credit, and/or dependent care credit,

could be economically devastating for a low-income family.

11.     This fear of having one's tax refund intercepted is exactly what Defendant sought

to instill by sending out hundreds or thousands of copies of the letter attached as Exhibit A.

Upon information and belief, Defendant knew that this deceptive debt collection technique

would be particularly effective in pressuring unsophisticated, low-income consumers into

settling debts, even those that would otherwise be time-barred. Moreover, upon information and

belief, Defendant knew that if it tricked a consumer into making just one payment on a time-

barred debt, the statute of limitations would restart.

12.     Plaintiff is filing this lawsuit to protect herself and other consumers from this

abusive, deceptive, and unfair practice, once and for all.

4

## JURISDICTION AND VENUE

12.　　The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.　　Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

14.　　Plaintiff Khadija Diallo resides in Queens County, New York.  Ms. Diallo is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

15.　　Defendant APIM is a corporation organized under the laws of the State of California, with its principle place of business at 22568 Mission Blvd., #525, Hayward, CA 94541. It may be served through its agent, Benjamin Chui, at 22568 Mission Blvd., #525, Hayward, CA 94541. Defendant APIM's principal business is debt collection.  It is a purchaser and collector of defaulted consumer debts and is regularly engaged in the business of collecting, directly or indirectly, debts alleged to be due another using the mail, telephone, and Internet.

16.　　Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## FACTS

17.　　On or about October 24, 2011, Defendant mailed a letter to Plaintiff in an attempt to collect an alleged debt owed to an original creditor, Bank of America. (Exhibit A.)

18.　　This letter was the first communication Plaintiff received from Defendant. The letter sent from Defendant to Plaintiff reads as follows:

5

We have made multiple attempts to work with you on concluding your debt to APIM. This includes zero interest installment program with low monthly payment, and discounted settlement in full. [*sic*] At this time APIM must look to determine the status of all unconcluded accounts.

Your account as of today is considered unresolved, and we have prepared the Form 1099-C and may report to the IRS if the account is not satisfied shortly. Please see the attached draft copy of the Form 1099-C. At a 30% tax bracket, this is approximately **$2,038.05 in taxes** you will be owing to the US Treasury for the year 2011.

Upon receipt of this letter, please contact us right away. We are willing to work out arrangements on your account if you contact us at (888)969-3888. Once the Form 1099-C is filed with the US Government, we will no longer be able to offer alternatives and/or settle your debt.

(bold and underscore in original).

19.     This letter contained a number of false, misleading, and deceptive statements regarding the Defendant's previous attempts at collecting the alleged debt; the character, amount, and legal status of the alleged debt; the repercussions of Plaintiff not paying the alleged debt; and Defendant's intentions should Plaintiff fail to pay the alleged debt, each of which is detailed below.

**False Statements Regarding Past Collection Attempts**

20.     Despite Defendant's contention that it had "made multiple attempts to work with [Plaintiff] on concluding [her] debt to APIM," this, in fact, was the first communication Plaintiff received from Defendant.

**Failure to Provide Disclosures Required by 15 U.S.C. §§ 1692g(a) and 1692e(11)**

21.     The collection letter at issue is Defendant's initial communication with Plaintiff, but does not include the disclosures required by 15 U.S.C. § 1692g(a). Specifically, the letter does not:

6

A. State the amount of the debt correctly;

B. State the name of the creditor to whom the alleged debt is owed;

C. Include a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

D. Include a statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or

E. Include a statement that, upon the consumer's written request within the 30-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

22.      As the initial communication with Plaintiff, the letter fails to include the warnings required by 15 USC § 1692e(11) that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.

23.      Even if it were not the initial communication with Plaintiff, the letter would still violate 15 USC § 1692e(11) as the letter does not state clearly that this communication is from a debt collector.

24.      Upon information and belief, it is the pattern and practice of Defendant to send letters such as Exhibit A, which fail to provide mandatory disclosures required by the FDCPA.

**False, Misleading, and Deceptive Statements Regarding the IRS Form 1099-C**

**_False, misleading, and deceptive statements about Plaintiff's tax liability_**

25.      APIM conceals that in order for Ms. Diallo to incur any tax liability, APIM would first have to cancel the debt, discharging her of any liability to APIM.

7

26.     A financial institution must file IRS Form 1099-C, also known as a Cancellation

of Debt Form, with the Internal Revenue Service (IRS) when it cancels a debt of $600 or more.

The IRS Form 1099-C must be filed by January 31 of the year following the cancellation of debt

and is filed regardless of whether the canceled debt will count as taxable income for the debtor.

26 C.F.R. § 1.6050P–1(f)(3). For tax purposes, a cancellation of debt is not the same as a charge-

off. A charge-off is an accounting entry while a cancellation is a legal decision not to collect a

debt. *Compare* 65 Fed. Reg. 36,903 *with* 26 U.S.C. § 6050P.

27.     There must be an occurrence of an "identifiable event" before an IRS Form 1099-

C is required. 26 C.F.R. § 1.6050P–1(a)(1).

28.     There are eight specific identifiable events listed in the regulations that require

issuance of an IRS Form 1099-C:

A. A discharge of indebtedness under title 11 of the United States Code
   (bankruptcy);
B. A cancellation or extinguishment of an indebtedness that renders a debt
   unenforceable in a receivership, foreclosure, or similar proceeding in a federal
   or State court . . .;
C. A cancellation or extinguishment of an indebtedness upon the expiration of
   the statute of limitations for collection of an indebtedness . . .;[1]
D. A cancellation or extinguishment of an indebtedness pursuant to an election of
   foreclosure remedies by a creditor that statutorily extinguishes or bars the
   creditor's right to pursue collection of the indebtedness;
E. A cancellation or extinguishment of an indebtedness that renders a debt
   unenforceable pursuant to a probate or similar proceeding;
F. A discharge of indebtedness pursuant to an agreement between an applicable
   entity and a debtor to discharge indebtedness at less than full consideration;
G. A discharge of indebtedness pursuant to a decision by the creditor, or the
   application of a defined policy of the creditor, to discontinue collection
   activity and discharge debt; or

---

[1] "In the case of an expiration of the statute of limitations for collection of an indebtedness, an identifiable event occurs under paragraph (b)(2)(i)(C) of this section only if, and at such time as, a debtor's affirmative statute of limitations defense is upheld in a final judgment or decision of a judicial proceeding, and the period for appealing the judgment or decision has expired." 26 C.F.R. § 1.6050P–1(b)(2)(ii).

H. [For original creditors], the expiration of the non-payment testing period, as described in paragraph (b)(2)(iv) of this section.

26 C.F.R. § 1.6050P-1(b)(2)(i)(A)-(H).

29.     Typically, the identifiable event for a debt collector like Defendant is reaching a settlement agreement with a debtor, in which the collector agrees to cancel a portion of the debt in exchange for the debtor's promise to pay the rest of the debt. This is the situation contemplated by section 26 C.F.R. § 1.6050P-1(b)(2)(i)(F) quoted above. No such settlement agreement had been reached between Plaintiff and Defendant.

30.     With the exception of (G) above, no other identifiable event applies to Plaintiff.

31.     Therefore, one must presume that the only possible identifiable event that might apply to Plaintiff is a "discharge of indebtedness pursuant to a decision by the creditor . . . " as outlined above in § (b)(2)(i)(G).

32.     However, the letter conceals the fact that in order for Defendant to "report to the IRS" and file the IRS Form 1099-C, it must first discharge the alleged debt owed by Plaintiff. Obscuring this fact leads "the least sophisticated consumer"[2] into believing that he or she will owe the IRS *in addition to* owing the alleged debt to Defendant. Defendant feeds this false impression with its final statement that once the form is filed, it "will no longer be able to offer alternatives and/or settle your debt."

### *False, misleading, and deceptive statements about amount owed to the IRS*

33.     APIM exaggerates the amount that Ms. Diallo would owe to the IRS if APIM were to cancel the debt. The letter represents to the least sophisticated consumer

---

2 *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

that the issuance of the IRS Form 1099-C will result in tax liability at a 30% tax bracket when no such tax bracket even exists and, in any case, is presumably a tax rate arbitrarily chosen by APIM to coerce payments from consumers. The letter states, "[a]t a 30% tax bracket . . . *you will be owing* . . . ("approximately $2,038.05 in taxes")" (emphasis added). This is especially misleading because: (a) Defendant has no basis to know or even guess Plaintiff's tax bracket; (b) there is no 30% 2011 federal income tax bracket; and (c) the closest applicable tax bracket (28%) applies to single people earning between $83,601and $174,400.

34.    Upon information and belief, Defendant chose this tax bracket despite having no knowledge of Plaintiff's income, and knowing that it was highly likely, given the types of debts it collects on, that most, if not all, of the recipients of this letter would have incomes that fall far below the 28% tax bracket, as in fact Ms. Diallo does.

35.    Upon information and belief, Defendant does this to increase the alleged tax liabilities the consumers would owe, and thus further intimidate them into resolving disputed or time-barred debts.

### *False, misleading, and deceptive statements about exemptions for tax liability*

36.    APIM purposefully fails to disclose the several exemptions to tax liability available to Ms. Diallo, even if APIM did cancel the debt.  The letter fails to inform Plaintiff that there are a number of frequently applicable exceptions within the Internal Revenue Code that allow a debtor to exclude cancelled debt from taxable income.  These exceptions include insolvency, bankruptcy, and the qualified principal residence exclusion. 26 USCA § 108(a)(1)(A)-(E). In fact, had Defendant actually filed a Form

10

1099-C with the IRS, Plaintiff would have been able to exclude the cancelled debt as income because she was insolvent at the time the debt would have been cancelled.

### *False, misleading and deceptive statements about reporting the debt to the IRS*

37.     Upon information and belief, APIM threatened to report Ms. Diallo's debt to the IRS with no actual intention of following through with the threat. Despite Defendant's threats to do so, and despite Plaintiff not contacting Defendant upon receipt of this letter, Defendant, in fact, did not file an IRS Form 1099-C for Plaintiff by the January 31, 2012 deadline for the 2011 tax year. Upon information and belief, Defendant never files IRS Forms 1099-C for debtors who have not entered into settlements for less than the full amount. To do so would require Defendant to stop collecting on a debt and forego any possibility of a financial return on its investment.

38.     Upon information and belief, it is the pattern and practice of Defendant to send letters such as that attached as Exhibit A, which falsely threaten the issuance of an IRS Form 1099-C for the purpose of deceiving consumers into making payments, and to make payments on time-barred debt.

### Violations of New York City Debt Collection Laws Also Violate the FDCPA

39.     APIM's demand letter sought to collect a time-barred putative debt.

40.     However, the letter failed to include the statutorily required warning to consumers regarding the effect of making a payment on a time-barred debt, as required by § 2-191 of the Rules of the City of New York:

> WE ARE REQUIRED BY LAW TO GIVE YOU THE FOLLOWING
> INFORMATION ABOUT THIS DEBT. The legal time limit (statute of
> limitations) for suing you to collect this debt has expired. However, if
> somebody sues you anyway to try to make you pay this debt, court rules

> REQUIRE YOU to tell the court that the statute of limitations has expired
> to prevent the creditor from obtaining a judgment. Even though the statute
> of limitations has expired, you may CHOOSE to make payments.
> However, BE AWARE: if you make a payment, the creditor's right to sue
> you to make you pay the entire debt may START AGAIN.

41.     Upon information and belief, it is the pattern and practice of Defendant to mail standardized collection letters to consumers in New York City seeking to collect time-barred debts without providing the notices required by § 2-191 of the Rules of the City of New York.

42.     Upon information and belief, Defendant's intent in sending out letters demanding payment on time-barred accounts without providing the statutory warnings required by § 2-191 is to deceive consumers into making payments on time-barred accounts and restart the statute of limitations.

43.     Defendant's letter also fails to comply with NYC Admin Code § 20-493.1(A)(i), which requires a debt collector to provide in any communication with a consumer "a call-back number to a phone that is answered by a natural person."

44.     In addition, upon information and belief, Defendant is not and has never been licensed to collect debts in New York City as required by New York City Admin. Code § 20-490, yet has engaged and continues to engage in the collection of debts within New York City.

45.     APIM's failure to become licensed harms New York City consumers, including Plaintiff. The licensing process requires debt collectors to disclose whether any of their individual shareholders or officers has been convicted of a crime; whether any civil charge, including an administrative charge, is pending against them; whether they are currently subject to a lawsuit; whether any judgment has been entered against them; and whether they have any outstanding unpaid judgment.

12

46.     Upon information and belief, the owner and principal of APIM were censured by

the Securities and Exchange Commission in December 2010, a fact that likely would have

affected the decision by the New York City Department of Consumer Affairs to issue APIM a

license to collect debts in New York City.

47.     The inclusion of a debt collector's license number on correspondence provides

notice to consumers that it is regulated by the NYC Department of Consumer Affairs, which is a

source from which consumers can seek information about their rights and with which consumers

may lodge complaints about illegal or inappropriate debt collection practices.

48.     The licensing application process also helps flag rogue, abusive debt collectors

who have repeatedly violated the FDCPA. Upon information and belief, the Defendant's willful

refusal to become licensed reduces the likelihood that it will be held accountable for its FDCPA

violations or be screened out if it had repeatedly violated the FDCPA, thus gaining an unfair

competitive advantage over legitimate debt collection competitors.

## CLASS ACTION ALLEGATIONS

49.     Under Federal Rule of Civil Procedure 23, a class action is appropriate and

preferable in this case.

50.     The proposed class consists of all persons who, according to Defendant's records:

A.  have mailing addresses within New York State; and

B.  within one year before the filing of this action (for FDCPA claims) or within three years
    before the filing of this action (for NY GBL § 349 claims)

C.  were sent a written communication:

    (1) identical or substantially similar to the letter (Exhibit A) attached to this complaint;

13

(2) that falsely threatened to file a Form 1099-C with the IRS;

(3) that was an initial written communication that did not include the statutorily required information and warnings listed in 15 USC § 1692g(a);

(4) that was the initial communication but failed to include the warnings required by 15 USC § 1692e(11) that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose;

(5) that was a written communication that failed to state that the debt collector was attempting to collect a debt as required by 15 USC § 1692e(11); or

(6) that falsely stated that APIM had made multiple attempts to resolve a purported debt; and

D. for the NY GBL § 349 claims, the written communications were not returned by the post office as undelivered.

51.    The proposed subclass consists of all persons who, according to Defendant's records:

A. have mailing addresses in New York City;

B. within one year before the filing of this action (for FDCPA claims) or within three years before the filing of this action (for NY GBL § 349 claims);

C. were sent a written communication:

(1) identical or substantially similar to the letter attached as Exhibit A;

(2) other than an initial written communication providing the information required by 15 USC § 1692g(a);

(3) that sought to collect a time-barred debt without including the statutorily required

14

warnings to consumers regarding the effect of making a payment on a time-barred

debt as required by §2-191 of the Rules of the City of New York;

(4) that sought to collect a debt for a period of time when APIM was not licensed as

required by New York City Admin. Code § 20-490; and

D. for the NY GBL § 349 claims, the written communications were not returned by the post

office as undelivered.

52.     Under Federal Rule of Civil Procedure 23, a class action is appropriate and

preferable in this case because:

A.  The class and subclass are so numerous that joinder of all members is impractical. Upon

information and belief, APIM has sent and continues to send to hundreds, if not

thousands, of consumers in New York City false written communications containing the

same misrepresentations as the letter Ms. Diallo received.

B.  There are questions of law and fact common to the class and subclass that predominate

over any questions affecting only individual class members. These common questions

include whether the letter attached to this complaint (Exhibit A) violates the FDCPA or

NY GBL § 349.  Such written communications are to be evaluated by the objective

standard of the hypothetical "least sophisticated consumer."  The only individual issue is

the identification of the consumers who received the written communications (*i.e.*, the

class members), which is a matter capable of ministerial determination from the

Defendant's records.

C.  The claims of Plaintiff are typical of the class members' claims.  All are based on the

same facts and legal theories.

15

D. Plaintiff will fairly and adequately represent the class members' interests. All claims are based on the same facts and legal theories and Plaintiff's interests are consistent with the interests of the class.

E. Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims.

53.     Prosecution of separate actions by individual members of the class and subclass would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

54.     A class action is superior for the fair and efficient adjudication of the class members' claims.

55.     Congress specifically envisions class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. § 1692k.

56.     The class members are generally unsophisticated consumers unaware of the protections afforded them by the FDCPA, whose rights will not be vindicated in the absence of a class action.

57.     Defendant's actions have damaged Plaintiff and those similarly situated as Plaintiff. For example, Defendant's misrepresentations affected Plaintiff's tax decisions, delaying receipt of any potential tax refund.

## COUNT I

### Violations of the Fair Debt Collection Practices Act

58.     Plaintiff repeats and realleges each and every allegation set forth above as if

16

reasserted and realleged herein.

59.      The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir.2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope").

60.      Congress designed the FDCPA to be *enforced primarily through private parties* – such as Plaintiff – acting as "private attorneys general." S. Rep. No. 382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. N.Y. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

61.      Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a debt.

62.      The obligation alleged to be owed by named Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was allegedly incurred primarily for family, personal or household purposes.

17

63.    Defendant is a "debt collector" as defined in 15 U.S.C. § 1692a(6) because its principal purpose is the collection of debts and/or it regularly attempts to collect debts, directly or indirectly. Upon information and belief, Defendant sends out thousands of collection letters to consumers.

64.    The actions of Defendant enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

65.    Defendant materially violated the following sections of the FDCPA: 15 USC §§ 1692d, 1692e, 1692f and 1692g. Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt:

A.    engaging in conduct the natural consequence of which is to harass, oppress or abuse any person;

B.    using false, deceptive or misleading representations or means;

C.    misrepresenting the character, amount or legal status of the debt;

D.    misrepresenting the services rendered or compensation which may be lawfully received;

E.    threatening to take and actually taking an action prohibited by law, or which is not intended to be taken;

F.    communicating or threatening to communicate to any person credit information which is known or which should be known to be false;

G.    using unfair or unconscionable means;

H.    failing to disclose in the initial communication with the consumer that the debt

18

collector is attempting to collect a debt and that any information obtained will be used for that purpose;

I.    failing to include in any written communication that the debt collector is attempting to collect a debt; and

J.    failing to provide disclosures required by § 1692g(a).

**COUNT II**

**Violations of New York General Business Law Section 349, *et seq.***

66.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

67.    NY GBL § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state . . . ."

68.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." NY GBL § 349(h).

69.    Defendant violated NY GBL § 349 by using deceptive acts and practices in the conduct of its business:

A.  Defendant mailed Plaintiff a debt collection letter that contained a number of false, misleading, and deceptive statements regarding the Defendant's previous attempts at collecting the alleged debt; the character, amount, or legal status of the alleged debt; the repercussions of Plaintiff not paying the alleged debt; and Defendant's intentions should Plaintiff fail to pay the alleged debt;

19

B.  Defendant attempted to collect a debt in New York City when Defendant is not

licensed to collect debts in New York City as required by New York City Admin.

Code § 20-490; and

C.  Defendant mailed Plaintiff a debt collection letter that failed to disclose her legal

rights regarding the effect of statute of limitations on debt payment as required by §

2-191 of the Rules of the City of New York when the debt is past the applicable

statute of limitations.

70.     Defendant's conduct has a broad impact on consumers at large. Defendant's conduct

impacts the hundreds if not thousands of consumers in the State of New York who, on information

and belief, were sent the mass-produced form debt collection letters.

71.     Defendant committed the above-described acts willfully and/or knowingly.

72.     Defendant's wrongful and deceptive acts have caused injury and damages to

Plaintiff and class members and unless enjoined will cause further irreparable injury. Actual

damages include, without limitation, amounts paid as a result of the letters.

73.     As a direct and proximate result of those violations of NY GBL § 349, Plaintiff and

class members have suffered compensable harm and are entitled to injunctive relief, and to recover

actual and treble damages, costs and attorney's fees.

## JURY DEMAND

74. Plaintiff demands a trial by jury.

## PRAYER

75. WHEREFORE, Plaintiff and members of the class request the following relief against

Defendant:

A. An order certifying this case as a class action under FRCP 23 and appointing the named Plaintiff to be Class representative and her counsel to be Class counsel;

B. A declaration that Defendant has committed the violations of law alleged in this action;

C. An order enjoining and directing Defendant to cease violating NY GBL § 349;

D. Statutory damages pursuant to 15 U.S.C. § 1692k and NY GBL § 349(h);

E. An order awarding disbursements, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k and NY GBL § 349;

F. A judgment for actual, statutory, and treble damages;

G. Pre-judgment and post-judgment interest as allowed by law; and

H. Such other relief, in law and in equity, both special and general, to which Plaintiff and the class may be justly entitled.

Dated:      Brooklyn, New York
            October _16_, 2012

                              Respectfully submitted,


                              Ahmad Keshavarz
                              ATTORNEY IN CHARGE
                              The Law Office of Ahmad Keshavarz
                              16 Court St., 26th Floor
                              Brooklyn, NY 11241-1026
                              Phone: (718) 522-7900
                              Fax:    (877) 496-7809
                              Email: ahmad@NewYorkConsumerAttorney.com


21

MFY LEGAL SERVICES
Carolyn E. Coffey (CC 6741)
Evan Denerstein (ED-3538), of counsel to
Jeanette Zelhof, Esq.
299 Broadway, 4th Fl.
New York, NY 10007
Phone: (212) 417-3701
Fax: (212) 417-3890 (fax)
Email: ccoffey@mfy.org
Email: edenerstein@mfy.org

22

# EXHIBIT A

APIM, LLC
22568 Mission Blvd., Suite 525
Hayward, CA 94541
(888)969-3888
support@apimllc.com

 

KHADIJA J DIALLO
17240 133RD AVE APT 3B
JAMAICA, NY 11434

October 24, 2011

Original Creditor: BANK OF AMERICA
Original Account Number: '4800114015943577
APIM File Number: 000099823
Total Balance Due: $6,793.49

Dear KHADIJA J DIALLO,
We have made multiple attempts to work with you on concluding your debt to APIM. This includes zero interest installment program
with low monthly payment, and discounted settlement in full. At this time APIM must look to determine the status of all unconcluded
accounts.

Your account as of today is considered unresolved, and we have prepared the Form 1099-C and may report to the IRS if the account is
not satisfied shortly. Please see the attached draft copy of the Form 1099-C. At a 30% tax bracket, this is approximately $2,038.05 in
taxes you will be owing to the US Treasury for the year 2011.

Upon receipt of this letter, please contact us right away. We are willing to work out arrangements on your account if you contact us at
(888)969-3888. Once the Form 1099-C is filed with the US Government, we will no longer be able to offer alternatives and/or settle
your debt.

Sincerely,
APIM, LLC

---------------------------------------------------------------------------------------------------------------------------

**Please include our file number on all correspondence.**

P. O. Box 32
Hayward, CA 94543

**October 24, 2011**
Letter Code: 2011-1099C

Mail all correspondence and payments to:
APIM LLC
22568 Mission Blvd., Suite 525
Hayward, CA 94541

| IF PAYING BY CREDIT CARD, COMPLETE ALL, SIGN AND RETURN. | | | |
|---|---|---|---|
| CHECK CARD USING FOR PAYMENT:   [ ] **VISA**   [ ]   [ ]   [ ] | | | |
| CARD NUMBER PLUS 3 DIGIT SECURITY CODE (on back of card) | | | EXP. DATE / |
| CARDHOLDER NAME | CARDHOLDER SIGNATURE | | AMOUNT $ |

**Total Due: $6,793.49**
APIM File Number: 000099823

KHADIJA J DIALLO
17240 133RD AVE APT 3B, JAMAICA, NY 11434

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city, state, ZIP code, and telephone no. APIM, LLC 22568 Mission Blvd., Suite 525 Hayward, CA 94541 (888)969-3888 | | 1 Date canceled 11/30/2011 | OMB No 1545-1424 **2011** Form **1099-C** | Cancellation of Debt |
|---|---|---|---|---|
| | | 2 Amount of debt canceled $ 6,793.49 | | |
| | | 3 Interest if included in box 2 $ 3,843.11 | | |
| CREDITOR'S federal identification number ▮▮▮▮ | DEBTOR'S identification number ▮▮▮▮ | 4 Debt description Original Creditor: BANK OF AMERICA Original Account Number: '4800114015943577 | | Copy B For Debtor |
| DEBTOR'S name KHADIJA J DIALLO | | | | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| Street address (including apt.no.) 17240 133RD AVE APT 3B | | 5 If checked, the debtor was personally liable for repayment of the debt  _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| City, state, and ZIP code JAMAICA, NY 11434 | | | ☒ | |
| Account number (see instructions) 000069823 | | 6 Bankruptcy (if checked) ☐ | 7 Fair market value of property $ | |

Form **1099-C**  (keep for your records)  Department of the Treasury - Internal Revenue Service