UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KHADIJA DIALLO | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:12-cv-05193-DLI-JMA |
| v. | ) |
| | ) |
| APIM, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>Plaintiff's Memorandum of Law in Support of Application for
Attorney's Fees and Costs</u>

I.   Introduction

Plaintiff Khadija Diallo submits this brief in support of her application for attorney's fees and costs for resolving this matter. As shown below, the attorney's fees sought are reasonable and supported by the time records of the attorneys. Plaintiff seeks $9,050.75 in attorney's fees, and $450.00 in costs.

II.   Background and Summary of Case

Plaintiff commenced this lawsuit against Defendant on October 16, 2012, asserting numerous federal and state claims arising out of the Defendant's attempts to collect Plaintiff's time-barred credit card debt. Plaintiff alleged violations of, *inter alia*, the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA) and New York General Business Law § 349. Plaintiff alleged that Defendant's conduct was in violation of these federal and state laws through, *inter alia,* attempting to collect on an alleged debt that was beyond the statute of limitations, falsely

1

representing the legal status of the debt, implying that nonpayment of the debt would result in tax trouble with the IRS, using deceptive means, and failing to send Plaintiff materials that are required by New York law.

This action was commenced on October 16, 2012 by the filing of the Summons and Complaint. On November 5, 2012, a supplemental summons was issued as to APIM, LLC by and through its registered agent Benjamin Chui. On November 20, 2012, a copy of the supplemental summons and complaint were served on Defendant APIM, LLC, by and through its registered Agent, Benjamin Chui, via substituted service, pursuant to California Code of Civil Procedure § 415.20(a). Defendant APIM, LLC has not answered the complaint or otherwise defended this action and the time for the defendant to answer the complaint or otherwise defend this action has expired. Default was entered by the Clerk pursuant to Fed. R. Civ. P 55(a) on February 14, 2013.

II.   **The attorney's fees and costs sought by Plaintiff are fair and reasonable**

Following Defendant's default, District Judge Irizarry remanded the case to the Magistrate Judge Azrack for damages and fees. As "prevailing parties" under the FDCPA, 15 U.S.C. § 1692k and GBL § 349, Plaintiff is therefore entitled to reasonable attorney's fees, costs, and disbursements.

In awarding fees and costs, the Court should respectfully bear in mind Congress' goals in mandating fee-shifting under the FDCPA. Congress enacted the FDCPA more than three decades ago because of "abundant evidence of the use of

abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy."[1] Congress found that existing laws and procedures were "inadequate to protect consumers" and "means other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts."[2] Congress also fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt collectors pay "reasonable attorney's fees as determined by the court."[3]

### A. FDCPA fee standards

Where, as here, an attorney fees provision is phrased in mandatory terms, "fees may be denied a successful plaintiff only in the most unusual of circumstances."[4] An award of fees is also mandatory in FDCPA cases.[5] Fees are mandatory even if there has been no award of actual or statutory damages.[6] Civil suits will deter abusive practices only if it is economically feasible for consumers to bring them. "Unless consumers can recover attorney's fees, it may not be possible

---

[1] 15 U.S.C. § 1692(a).
[2] 15 U.S.C. § 1692(b) and (c).
[3] 15 U.S.C. § 1692k(a)(3).
[4] *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir. 1990) (truth in lending).
[5] *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997); *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (George C. Pratt, C.J.); *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (FDCPA "mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general").
[6] *Emanuel v. American Credit Exchange*, 870 F.2d 805, 808 (2d Cir. 1989); *Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 28 (2d Cir. 1989).

for them to pursue small claims. . . . Unscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds. Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs."[7] Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiffs – acting as "private attorneys general."[8]

### B. The proposed fee is reasonable

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,[9] the Second Circuit clarified the proper analysis for a district court to undertake in exercising its considerable discretion in awarding attorney's fees. A court is to:

> [B]ear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson*[10] factors; it should also bear in

---

[7] Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn. App. 1984); *see also Jacobson v. Healthcare Fin. Serv., Inc.*, 516 F.3d 85 (2d Cir. 2008) ("the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

[8] *See* S. Rep. No. 382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [Plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

[9] 493 F.3d 110, 117-18 (2d Cir. 2007).

[10] *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the presumptively reasonable fee.[11]

As shown below, the *Johnson* factors support the reasonableness of the negotiated fee. The *Johnson* factors are:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal services properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee in the community;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount of time involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.[12]

There is no strict formula as to how these factors are to be applied.[13] Once a figure for attorney's fees is calculated using the *Johnson* factors, that amount becomes the "lodestar" which can then be adjusted upwards or downwards, again using the *Johnson* factors.[14] "[M]any of those factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."[15]

---

[11] *Id.*
[12] *Id.*
[13] *Trimper v. City of Norfolk*, 846 F. Supp. 1295, 1303 (E.D. Va. 1994).
[14] *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).
[15] *Id.* at 434 n.9.

5

If the lodestar figure is properly calculated, adjustment will be unnecessary in most cases.[16] There is a strong presumption that the lodestar figure (reasonable hours multiplied by a reasonable rate) represents a reasonable fee.[17] Currently prevailing marketplace rates establish the lodestar amount.[18] "The district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms. Lawyers of common expertise and experience in the same market are entitled to the same rate.[19]

District courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable hourly rate. Cases suggest that in determining the relevant "market," a court may look to rates charged by those similarly situated, including looking to the rates charged by large- or medium-sized law firms, based on the widely-held premise that a client represented by a medium-sized firm pays less than a client represented by a large firm with higher overhead costs.[20] But whether or not the aforementioned premise – that the bigger the firm the higher the attorneys' hourly rates charged – is correct, and even

---

[16] *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).
[17] *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989), quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986).
[18] *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *Blum*, 465 U.S. at 895; *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (rejecting 46 hours on pretrial memo and 42 hours on fee application); *Cohen v. West Haven Bd. Of Police Com'rs*, 638 F.2d 496, 506 (2d Cir. 1980).
[19] *Bankston v. State of Illinois*, 60 F.3d 1249, 1255-56 (7th Cir. 1995); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993) (no distinction between solo and large firm rate); *Gary v. Kason Credit Corp.*, No. 95-CV-54 (D. Conn. Oct. 21, 1998) (rejecting "overhead" argument).
[20] *See e.g.*, *Chambless v. Masters Mate & Masters Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989); Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 895 (S.D.N.Y. 1994).

assuming it may be that solo practitioners of equal skill, expertise and reputation, charge less than those at large- or medium-sized firms, courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner. Overhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate.[21] Rather, overhead merely helps account for why some attorneys charge more for their services. Indeed, it may be that in certain niche practice areas, attorneys of the highest "skill, expertise and reputation" have decided to maintain a solo practice instead of affiliating themselves with a firm. The reasons for doing so may be numerous, including the inherent problems of higher overhead, fee-sharing, and imputed conflicts of interest. The focus of the inquiry into the reasonable hourly rate must instead be determined by reference to "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation."[22] Working as a solo practitioner may be relevant to defining the market,[23] but it would be error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate.[24]

---

[21] *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987); *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984) (rejecting the Solicitor General's suggestion that fees awarded to non-profit legal aid societies be based on a "cost-related standard").

[22] *Blum*, 465 U.S. at 295 n.11; *Chambless*, 885 F.2d at 1058-59.

[23] *See Chambless*, 885 F.2d at 1059 ("smaller firms may be subject to their own prevailing market rate.")

[24] *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006) (emphasis added).

While the Court has discretion to determine the proper fee amount, "the latitude of its discretion is narrowed by a presumption that successful [litigants] should recover reasonable attorney's fees unless special circumstances render such an award unjust."[25] "[A] party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified."[26]

### C. No upward or downward adjustment is necessary

The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate.[27] Here, Plaintiff seeks a total of $9,050.75 in fees and $450.00 in costs. This is already a significant reduction in the loadstar method in the exercise of billing discretion by Plaintiff's counsel. An itemization of fees and costs are attached as Exhibit A (Affirmation of Ahmad Keshavarz, The Law Office of Ahmad Keshavarz) and Exhibit B (Affirmations of Evan Denerstein, Carolyn Coffey, and Jeanette Zelhof, MFY Legal Services, Inc.). In addition to the affirmations of counsel, the hourly rate of counsel is further supported by the Affirmation of Brian Bromberg (Exhibit C), a consumer protection attorney who has litigated FDCPA suits extensively in the Eastern and Southern Districts of New York.

---

[25] *DiFilippo*, 759 F.2d at 234 (discussing civil rights litigants).
[26] *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (awarding $5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992); *see also* Laura B. Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984).
[27] *E.g.*, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant").

In summary the work of counsel at MFY is as follows:

| Counsel | Hours Worked | Hourly Rate | Total loadstar fee. |
| --- | --- | --- | --- |
| Evan Denerstein | 37.4 | $200 | $7,480 |
| Carolyn Coffee | 4.1 | $350 | $1,435 |
| Jeanette Zelhof | 2.2 | $400 | $880 |

The total loadstar fee for the counsel at MFY would be $9,795. However, counsel at MFY have used billing discretion and reduced the fees they seek by 15% to remove any overlap in the work of the counsel in their office. In sum, MFY seeks fees of $8,325.75.

Ahmad Keshavarz of The Law Office of Ahmad Keshavarz has worked as follows.

| Name | Year of Work | Hourly Rate | Hours Worked | Hours Sought | Fees Sought |
| --- | --- | --- | --- | --- | --- |
| Keshavarz | 2012 | $350 | 6.0 | 1.0 | $350 |
| Keshavarz | 2013 | $375 | 5.2 | 1.0 | $375 |

The loadstar amount for fees would be $4,050 ($2,100 for work done in 2012, and $1,950 in 2013.) However, in the exercise of billing discretion, Mr. Keshavarz seeks just $725 for attorney's fees for 1.0 hour of work in 2012 and 1.0 hour of work in 2013.[28] Mr. Keshavarz also seeks costs of $450, which is $350 for the filing fee and $100 for service of process.[29]

---

[28] Keshavarz is seeking fees for time spent in conferences with co-counsel in order to avoid possible redundancies; time spent researching possible individual owner liability as we did not proceed with suit against the owners personally; time spent communicating with the insurance adjuster for APIM or calls to APIM directly seeking to determine if they would file an answer as those efforts proved fruitless; calls and emails with the process server regarding service as these were, in part,

9

As previously seen, this already includes significant reductions on the lodestar amount to eliminate any fees for duplicative work. A further reduction is therefore not warranted. This case settled in a satisfactory manner to Ms. Diallo due to Plaintiff's counsel's knowledge and expertise in the field of consumer-protection law. An itemization of the fees of each counsel are attached and incorporated by reference.

### 1. The time and labor required.

Counsel for plaintiff incurred time in evaluating plaintiff's claim; drafting and filing an original complaint; drafting a motion for default and a motion for default judgment; drafting and filing this fee petition; and researching the same. While judgment was entered by default in this case, the motion for entry of default judgment was essentially a motion for summary judgment, requiring research on argument as to why each specific action of defendant violated the specific sections of the FDCPA and the New York General Business Law. A precise itemization is in the fee declarations and billing records of counsel.

Further, the amount of time spent in seeking and obtaining a default judgment in this case was on the low end. For instance, representative of other decisions are *Romano v. Accelerated Receivables*,[30] in which attorney fees were

---

functions that could have been performed by a paralegal. Keshavarz has also reduced time where he and co-counsel been revising the same documents, such as the complaint, or the application for default, to eliminate any possible duplication.

[29] Service was effectuated in California, and it took more than one attempt to obtain proper service under California state law.
[30] 2011 WL 6091704, at *3 (W.D.N.Y. Dec. 7, 2011).

granted for 15.3 hours of work toward a default judgment in an FDCPA action, *Clark v. Brewer, Michaels & Kane, LLC*,[31] in which the court approved the same, and *Dunn v. Advanced Credit Recovery Inc.*, a Southern District case in which the court noted, "18.25 hours is in line with other FDCPA cases in which fees were awarded following an entry of default judgment."[32]

### 2. The novelty and difficulty of the questions.

This case involved a series of issues arising out of Plaintiff's expired credit card debt. Plaintiff alleged violations of the following statutes: 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(11), 1692f, 1692g(a), and N.Y. § GBL 349. This lawsuit implicates complex and technical issues of tax law, including a detailed discussion of IRS Form 1099-C. The use of 1099-C Forms in connection with the collection of a debt involves a "complicated intersection of tax law and the FDCPA." Robert J. Hobbs, FAIR DEBT COLLECTION, 15 (National Consumer Law Center, 6th ed. 2008). In part because of this complexity, only a handful of cases have addressed the issue of FDCPA liability for a letter that makes threats regarding a consumer's tax liability *if* the debt is cancelled. *See, e.g., Follansbee v. Discover Fin. Servs., Inc.*, 2000 WL 804690 (N.D. Ill. June 21, 2000) (granting final approval of the proposed class action settlement and application for attorney's fees and incentive award for confusing debt collection letter about canceled debts and tax liability); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998) (certifying class where defendant sent misleading letter regarding cancelation of debt); *Wagner v. Client*

---

[31] 2009 WL 3303716, at *4 (W.D.N.Y. Oct. 14, 2009).
[32] 2012 WL 676350 (S.D.N.Y. Mar. 1, 2012).

11

*Servs, Inc.,* 2009 WL 839073 (E.D. Pa. March 26, 2009) (denying dismissal of claim that defendant's letter, which threatened that it was required to report debtor's discharge of indebtedness, violated FDCPA). This case required counsel experienced in the consumer tax law, such as Mr. Denerstein, as well as counsel with a rich background in FDCPA litigation. Even working toward default judgment on the various issues requires a degree of specialized legal acumen regarding the FDCPA, state consumer protection law, and tax law, as Plaintiff still has to meet the elements of her cause of action. Thus, the difficulty of litigating this case – one in such a specialized field – warrants the lodestar.

3. **The skill requisite to perform the legal services properly.**

Successful litigation of a consumer protection case requires skill and familiarity with the issues involved. The attached exhibits demonstrate the attorney's qualifications, and are incorporated by reference. As indicated, the interplay between lax law and FDCPA liability required specialized skill sets for this case. Plaintiff's counsels know of very few attorneys who purport to be able to litigate complex plaintiff's consumer-protection cases. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar.

4. **The preclusion of other employment.**

The time spent on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent a plaintiff in a contingency or fee-shifting

case in federal court. The substantial amount of time expended on Plaintiff's behalf was time which would have been spent on other matters, had this case not been filed or litigated to this extent.

It is appropriate to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiff's counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion, to the exclusion of helping other consumers. Thus, some consumers did not receive counsels' help so that Ms. Diallo could.

5. **The customary fee for like work in the community.**

Plaintiff's fee request is well within the range of similar work and is an amount recognized by other courts. Courts in this circuit routinely consider the rates of both the Eastern District of New York as well as the Southern District when undertaking this analysis.[33] Specifically, in the Eastern District of New York, hourly rates for attorneys have normally ranged from $200 to $375 an hour for partners.[34] Where (as here) the attorney has well over a decade of experience with

---

[33] *Larsen v. JBC Legal Group P.C.*, (E.D.N.Y. 2008) (quoting *New Leadership Committee v. Davidson*, 23 F.Supp.2d 301, 305 (E.D.N.Y. 1998).
[34] *Crapazano v. Nations Recovery Ctr.,* 2011 U.S. Dist. LEXIS 76759, at *4 (E.D.N.Y. June 29, 2011), *adopted by* 2011 U.S. Dist. LEXIS 76665 (E.D.N.Y. July 14, 2011) (citation omitted); *see also Baruch v. Healthcare Receivable Management*, 2007 WL 3232090 (E.D.N.Y. Oct. 30, 2007) ("In the Eastern District of New York, courts have awarded hourly rates to partners ranging from $200.00 to $375.00."). *Commission Express Nat'l, Inc. v. Rikhy,* 2006 WL 385323 (E.D.N.Y. Feb.17, 2006) ("In the Eastern District of New York, courts have awarded hourly rates to partners ranging from $200.00 to $375.00.").

working specifically in the field of consumer protection, especially with the FDCPA, a $375 per hour rate is customary.[35]

Where a small-firm attorney with seventeen years' experience sought fees in an FDCPA case in the amount of $450 per hour for himself and $300 for his colleague with six years of experience, the magistrate judge decided that they were to be paid $200 and $150, respectively.[36] The Eastern District rejected this ruling:

> Unlike Magistrate Judge Orenstein, I am convinced that a paying client would be willing to pay hourly rates of $450 and $300 for the services that [plaintiff's counsel] have rendered here. Although I take Magistrate Judge Orenstein's point that there are experienced counsel available to handle these types of matters for lower hourly rates, I find that counsels' requested rates are within the reasonable range for FDCPA cases in this district.[37]

Similarly, in *Baruch v. Healthcare Receivable Management* the court found that a solo practitioner with 19 years of <u>general practice</u> experience would not be paid $375 for his work on an FDCPA case; he would be paid $350.[38] A rate of $375 per hour of work is therefore customarily paid to attorneys with over a decade of specific experience in FDCPA cases in the Eastern District of New York.

### 6. Whether the fee is fixed or contingent.

An award of attorney fees in a contingency fee matter should compensate counsel for the risk of receiving no compensation. In consumer protection cases, the fee is very often contingent – not on the amount of damages, but on an award by the

---

[35] See Affirmation of Ahmad Keshavarz (Exhibit A, attached).
[36] *Rodriguez v. Pressler & Pressler LLP*, 2008 WL 5731854 (E.D.N.Y. Sept. 11, 2008).
[37] *Rodriguez v. Pressler & Pressler LLP*, 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009).
[38] 2007 WL 3232090 (E.D.N.Y. Oct. 30, 2007).

court or agreement by the opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation.[39] "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose."[40]

Here, Plaintiff's counsel were willing to provide services to Ms. Diallo whether she won or lost her case and whether or not counsel got paid for that work.

### 7. Time limitations imposed by the client or the circumstances.

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court. Plaintiff is required to submit a *Johnson* factors review, as mandated by the Second Circuit, in order to present her statutory costs and attorney's fees award, but this factor is of no consequence.

### 8. The amount involved and the results obtained.

The results obtained for Plaintiff are significant, and reflect counsel's substantial efforts in preparing and litigating this matter. Plaintiff has obtained a default judgment in this case. By any calculation, this is an excellent result.

### 9. The experience, reputation and ability of the attorney.

---

[39] *Blum v. Stenson*, 465 U.S. 886, 903 (1984).
[40] *Id.*

15

The experience, reputation, and ability of counsel in this case are outlined in detail in the attached affirmations of counsel.

10. **The undesirability of the case.**

There are very few attorneys who have the knowledge, ability, and willingness to represent consumers in this area of law. Most attorneys are unwilling to take the risk of large investments of time for what appear at first blush to be minor, small dollar cases.

11. **The nature and length of the professional relationship with the client.**

Ms. Diallo retained her attorneys specifically to pursue the specialized consumer protection laws at issue. Their employment was sought because of their legal abilities and reputations in this area of the law. Such representation is limited to consumer-protection claims, which are episodic, rather than ongoing, matters. Unlike their big-firm brethren, consumer attorneys cannot rely on hefty retainers from paying institutional clients or insurance companies over many years.

12. **Awards in similar cases.**

There are few reported cases in New York discussing attorney fee awards in FDCPA actions. Courts recognize that fee awards are to mimic the marketplace. Since recoveries under FDCPA are typically small, due to the limitation on statutory damages provided in 15 U.S.C. § 1692k, a proportionate fee award would often be insufficient to attract competent counsel.[41] Thus, "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is

---

[41] *Baruch v. Healthcare Receivable Management* 2007 WL 3232090 (E.D.N.Y. Oct. 30, 2007).

16

inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."[42]

Further, looking to other jurisdictions' decisions, courts have awarded fees many times the amount of the statutory damage award, as demonstrated by the following cases: Gradisher v. Check Enforcement Unit, 2003 WL 187416 (W.D.Mich., Jan. 22, 2003) (award of attorneys' fees of $69,872.00 and expenses of $7,808.44 based upon a recovery of $1,000 of statutory damages); Armstrong v. The Rose Law Firm, P.A., 2002 WL 31050583 (D.Minn., Sept. 5, 2002) (award of $43,180 in attorney fees on $1,000 in statutory damages); In re Martinez, 266 B.R. 523, 544 (Bankr. S.D.Fla. 2001), aff'd 271 B.R. 696 (S.D.Fla. 2001) (district court affirms the bankruptcy court's award of attorney fees of $29,037.50 on a recovery of $1,000 of statutory damages); Perez v. Perkiss, 742 F.Supp. 883 (D. Del. 1990) ($10,110 in attorney fees on $1,200 damage recovery); and Loggins v. Delo, 999 F.2d 364, 368 (8th Cir. 1993) (in this FDCPA suit, the court awarded $25,000.00 attorney's fee award for recovery of $102.50 in actual damages)  Indeed, the Seventh Circuit reversed a district court's denial of attorney fees even though Plaintiffs only recovered $100 ($50 each) as FDCPA statutory damages, and remanded for determination of an award of attorney fees. Zagorski v. Midwest Billing Services, Inc., 128 F.3d 1164 (7th Cir. 1997).

III.  Conclusion

---

[42] *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997).

For the foregoing reasons, Plaintiff respectfully requests that the Court approve Plaintiff" requested attorney's fees, costs, and disbursements.

Dated: New York, New York
March 29, 2013

Respectfully submitted,

/s/
MFY LEGAL SERVICES
Carolyn E. Coffey (CC 6741)
Evan Denerstein (ED 3538), of counsel to
Jeanette Zelhof, Esq.
299 Broadway, 4th Fl.
New York, NY 10007
Phone: (212) 417-3701
Fax: (212) 417-3890 (fax)
Email: ccoffey@mfy.org
Email: edenerstein@mfy.org

/s/
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone:     (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served foregoing as follows:

Via first class mail certified mail to:

        Defendant APIM, LLC
        22568 Mission Blvd.
        PMB# 525
        Hayward, CA 94541

Dated: Brooklyn, New York
      April 15, 2013

          /s/
      Ahmad Keshavarz
      The Law Office of Ahmad Keshavarz